UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

           - v -                              **REPORT AND RECOMMENDATION**

KAISEEM KINRED,                       CR-09-832 (SJ)(VVP)

                        Defendant.
-----------------------------------------------------------x

       The defendant Kaiseem Kinred[1] has been charged in a two-count indictment with possession of a firearm and ammunition after previously having been convicted of a felony and with possession of a firearm with a defaced serial number. The defendant has moved to suppress the firearm that is evidence of both charges on the ground that it was obtained as the result of an unlawful search, and for other relief relating to discovery and trial. Judge Johnson has referred the motion to me for a report and recommendation, which follows.

## BACKGROUND

       The charges arise from an encounter between the defendant and two officers of the New York Police Department on the grounds of the Pink Houses in Brooklyn. As a result of the encounter, which is described in greater detail below, the weapon at the heart of the case was recovered during a struggle between the officers and the defendant. The defendant contends that the struggle was unlawfully precipitated by

---

[1] In the indictment and other papers filed by the government, the defendant's last name is spelled "Kinred," while in the defendant's moving papers the last name is spelled "Kindred." The court has chosen the former spelling because that is the name in which the case was brought.

the officers. He has thus moved to suppress the weapon. In addition, he has sought four other items of relief: (1) bifurcation of the trial such that the issue of possession of the firearm is tried separately from the question of Kinred's prior felony conviction; (2) redaction of the indictment to eliminate any identification of the crime that constitutes the prior felony conviction; (3) disclosure by the government at least two weeks before trial regarding any prior bad acts the government will seek to introduce in evidence pursuant to Rule 404(b) of the Federal Rules of Evidence; and (4) discovery required by Rule 16 of the Federal Rules of Criminal Procedure and by constitutional mandates concerning exculpatory and impeachment evidence.

At a hearing held on April 19, 2010, the government confirmed its commitment, made in the papers filed by the government in connection with this motion, to redact the indictment as requested by the defendant, and acknowledged its obligation to provide exculpatory and impeachment evidence. The government likewise acknowledged its obligation to give notice in advance of trial concerning "bad acts" evidence, and committed to provide such evidence at least two weeks prior to trial as requested by the defendant. The defendant acknowledged that he had received the discovery required by Rule 16 of the Federal Rules of Civil Procedure. Accordingly, no orders are necessary with respect to the relief requested in items (2) through (4) in the paragraph above, leaving only the suppression and bifurcation issues for further discussion.

**I.     BIFURCATION**

The defendant seeks to bifurcate the trial to separate the weapon possession issue from the issue of his prior felony conviction. By trying the possession issue first, he would avoid the "overwhelming prejudicial effect" that evidence of his prior felony conviction would have on the jury. Declaration in Support & Accompanying Memorandum of Law (hereinafter "Def. Decl.") ¶ 27.[2] He cites the decision in *United States v. Jones*, 16 F.3d 487 (2d Cir. 1994), in support of the application.

The opinion in *United States v. Jones* provides a modicum of support for the defendant's position because it recognizes the prejudicial effect that proof of a prior felony conviction may have on a jury's deliberations. But the *Jones* decision is inapposite because the court there was concerned with whether the trial court erred in failing to sever a felon-in-possession count from other charges in the indictment on which proof of a prior felony conviction was not admissible. *See* 16 F.3d at 492-93. The court in *Jones* did not consider in any way a bifurcation of the type proposed by the defendant here.[3]

---

[2]Although the defendant's counsel refers only to the issue of possession of ammunition in the portion of the declaration that is devoted to bifurcation, *see* Def. Decl. ¶¶ 21-27, the court presumes that the defendant intended to bifurcate the issue of possession of both the weapon and the ammunition.

[3]The court in *Jones* determined that it was prejudicial error not to sever or bifurcate a felon-in-possession count from other counts in an indictment as to which proof of the defendant's prior felony would not be admissible. Thus, if the defendant were to request severance or bifurcation of the felon-in-possession count from the other weapon possession count here, *Jones* might require that relief.

The Second Circuit did, however, consider a bifurcation like that proposed by the defendant here in *United States v. Belk*, 346 F.3d 305 (2d Cir. 2003). Relying on a prior decision in *United States v. Gilliam*, 994 F.2d 97 (2d Cir. 1993), the court in *Belk* concluded that bifurcation was not required because "a district court's admission into evidence of defendant's prior conviction in a [felon-in-possession] case – when accompanied by a proper curative instruction and limited to the fact of the conviction itself – is *by definition* not prejudicial." 346 F.3d at 310 (emphasis in original). The court in *Belk* distinguished *United States v. Jones* on the ground that the issue there was whether to bifurcate the felon-in-possession charge in its entirety from the other charges in the case, and held that the decision in *Jones* "did not require or condone bifurcation of a single felon-in-possession charge." *Id*. The court in *Belk* also pointed out that a number of other circuits have also reached the conclusion that bifurcation of the type sought here is not required, and that two circuits – the First and the Ninth – have granted writs of mandamus to prevent such bifurcation. *Id*. at 310-11.

Although it is clear that bifurcation is not required, the question whether the court may nevertheless exercise its discretion to order bifurcation has not been definitively decided in this circuit. *See Belk*, 346 F.3d at 311. At least two other circuits, however, have decided that bifurcation should never be permitted. *See United States v. Barker*, 1 F.3d 957, 959 (9th Cir. 1993), *amended in part but reh'g denied by* 20 F.3d 365 (9th Cir. 1994) (reversing, on mandamus, district court's order bifurcating felon-in-possession trial, and holding that bifurcation is never permissible); *United States v.*

*Collamore*, 868 F.2d 24, 28 (1st Cir. 1989) (same), *overruled, in part, on other grounds by United States v. Tavares*, 21 F.3d 1 (1st Cir. 1994) (en banc).  And in *Belk*, the court expressed considerable skepticism about whether any circumstances would justify bifurcation.  346 F.3d at 311 ("However, in light of the concerns we expressed in *Gilliam*, we note that it would be an extraordinarily unusual case in which bifurcation of the elements of a charge under § 922(g)(1) could possibly be appropriate.").  The court's skepticism rests on a concern, articulated in *Gilliam* and in the other circuits that specifically addressed this issue, that the jury will not understand the true nature of the criminal offense with which the defendant is charged unless it knows a key element of the crime, specifically, that the person alleged to have possessed a weapon was previously convicted of a felony.  *See Gilliam*, 994 F.2d at 101-02; *Collamore*, 868 F.2d at 28; *Barker*, 1 F.3d at 959-60.  And without a complete understanding of the nature of the offense, a jury could "exercise its power of nullification on the unwarranted belief that the defendant was charged for noncriminal conduct."  *Barker*, 1 F.3d at 960.

The defendant has pointed to no extraordinary circumstances that would support bifurcation here.  Given the dictum in *Belk* and the concerns expressed by the various circuit courts that have addressed the question, there appears to be no basis for the court to exercise its discretion to order bifurcation.  The defendant's motion to bifurcate should therefore be denied.

## II. SUPPRESSION

The evidence produced at the hearing concerning the facts underlying the defendant's suppression motion came primarily from the testimony of Officer Vladimir Ravich, who has been employed with the New York Police Department for about three years. After six months of training, he was assigned to Police Service Area Two ("PSA2"), an assignment he has maintained up to the present. His responsibilities in PSA2 are to patrol the housing developments within the 73rd, 75th, and 77th precincts in Brooklyn – which cover East New York, Brownsville, and portions of Bedford-Stuyvesant – for general enforcement of quality-of-life. His tasks include conducting "perimeter checks" of the grounds adjacent to the buildings in the housing developments and conducting "vertical patrols" within the buildings themselves. In the two-and-a-half years that he has served on the force, Ravich estimates that he has made approximately one hundred forty arrests, mostly for narcotics and marijuana offenses.

On November 9, 2009, Ravich and his partner at the time, Sergeant Christopher Thomas, worked the 5:30 p.m. to 2:05 a.m. shift. At approximately 1:00 a.m., they were driving in a patrol car on a footpath within the grounds of the housing development known as the Pink Houses. As they neared the entrance to the building at 1257 Loring Avenue, Ravich observed the defendant Kaiseem Kinred sitting on a bench in an area about fifteen to twenty feet from the doorway to the building. Officer Ravich testified that he detected the smell of burning crack cocaine, a smell with which he had become

familiar, and saw faint smoke in the area around the defendant. His partner promptly parked the car on the walkway about eight to twelve feet behind Kinred, and they approached Kinred together on foot.

When they neared Kinred, Officer Ravich stopped and faced him at a distance of approximately three feet. Sergeant Thomas was slightly behind Ravich to his left. The defendant remained seated on the bench facing the entrance to the building. He was holding a book. Neither Ravich nor Thomas had their weapons drawn. Ravich asked Kinred what he was doing, and Kinred responded that he was waiting for his girlfriend. Thomas followed up by asking whether the defendant lived in the building, and the defendant said he did not.

Ravich then asked the defendant to move so that he could check the area around him for evidence of crack. Kinred responded by getting to his feet and bolting toward the entrance of the building, pushing Ravich out of the way in the process. The force was sufficient to propel Ravich backward, but he did not lose his balance and immediately gave chase. He caught up with the defendant and as he pulled Kinred around to face him, Kinred reached into his clothing in his abdominal area and produced a gun. Ravich tackled Kinred, dislodging the gun from his grasp. Kinred began punching Ravich and threw an elbow at Thomas who had joined the struggle. He also tried grabbing for both of the officers' weapons which had remained holstered. When Thomas gained sufficient control over Kinred, Ravich crawled over to where the gun had fallen, secured it, and rejoined Thomas in the effort to subdue Kinred.

Eventually, after using pepper spray, they were able to restrain him enough to apply handcuffs. Ravich called for backup, and Thomas called the emergency services unit when Kindred continued to struggle and attempt, unsuccessfully, to escape. Other officers arrived on the scene, including a lieutenant from PSA2. No crack or crack paraphernalia were recovered from the scene; nor was the book the defendant had been holding.

The defendant recognizes that there is no constitutional prohibition that prevents a police officer from approaching an individual and asking him questions, "[s]o long as a reasonable person would feel free to disregard the police and go about his business." *See Florida v. Bostick*, 501 U.S. 429, 434 (1991) (*citing California v. Hodari D.*, 499 U.S. 621, 628 (1991)(internal quotation marks omitted). He contends, however, that when Officer Ravich asked him to move the encounter between him and the officers was no longer consensual. Rather, at that point the police conduct amounted to a "seizure," requiring either reasonable suspicion, as articulated in *Terry v. Ohio*, 392 U.S. 1 (1968), or perhaps even probable cause. He argues that the police officers had neither. He urges the court to reject Officer Ravich's testimony that he smelled crack while in his patrol car some fifteen to twenty feet away from the defendant. The testimony is incredible, he argues, both because the distance makes such detection by smell improbable and because it is completely undercut by the absence of any evidence that crack, or any implements to light and smoke crack, were found at the scene. Without any reasonable suspicion that

criminal activity was underway, the police had no justification for asking the defendant to move and a reasonable person would not have felt free to disregard the command.

The government disputes that any seizure occurred until after the defendant pushed Officer Ravich out of his way as he made a dash for the entrance to 1257 Loring Avenue. Once the defendant made contact with the officer in that manner, they argue, there was probable cause to arrest him for harassment, and the resulting discovery and seizure of the weapon resulted from the efforts to effectuate that arrest. As to the credibility of Officer Ravich's testimony concerning the smelling of crack, the government discounted the failure to recover any physical evidence concerning the use of crack by pointing to testimony by Officer Ravich that implements for smoking crack can be as nondescript as a piece of tinfoil or a pipe as small as one's pinky finger. In the commotion that ensued, the inability to recover such items is no more remarkable than the failure to recover the book that the defendant had been holding. (The defendant himself acknowledged in his affidavit in support of the motion that he had been holding and using a cigarette lighter prior to being approached by the officers, albeit not for the purpose of smoking crack but to enable him to read the book.)

The Supreme Court has addressed the question of when a seizure has occurred within the meaning of the Fourth Amendment on a number of occasions and in a variety of factual contexts. In *Terry v. Ohio*, 392 U.S. 1 (1968), which articulated the "reasonable suspicion" standard for "stop and frisk" encounters, the Court observed that "not all personal intercourse between policemen and citizens involves 'seizures' of

persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." 392 U.S. at 19, n.16. The Court sought to further delimit the concept of a Fourth Amendment seizure in *Michigan v. Chesternut*, 486 U.S. 567 (1988), where the court announced that "the police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " 486 U.S. at 573 (*quoting United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).[4]

In *Florida v. Bostick*, 501 U.S. 429 (1991), the Court backed away somewhat from the "free to leave" test articulated in *Chesternut*. The court in *Bostick* dealt with an encounter on a bus in which two police officers approached a passenger, without reasonable suspicion, and began asking questions, after which they requested consent to search the passenger's luggage. When, upon the consent of the passenger, a subsequent search of the luggage disclosed cocaine, the passenger was arrested and charged with narcotics offenses. The Court rejected his argument that the cocaine should be suppressed as the product of an unconstitutional seizure. The Court reiterated the rule that "mere police questioning does not constitute a seizure." *Id*. at 434. The Court brushed aside the argument that the presence of the two officers standing over the passenger in a closely confined space where he had little room to

---

[4]The test had first been articulated in *Mendenhall* but had garnered the support of only two justices in a decision that saw a number of concurrences and dissents. *Chesternut*, in contrast, was a unanimous decision.

move constituted a seizure. Given the circumstances, since the encounter took place on a bus where the passenger's movements were confined, not because the police were asking him questions, but as "the natural result of his decision to take the bus," the fact that the passenger did not feel "free to leave" did not shed any light on whether the officers' conduct was coercive. *Id.* at 435-36. Thus, moving away from the "free to leave" test, the Court articulated the following rule: "in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." 501 U.S. at 439.

*California v. Hodari D.*, 499 U.S. 621 (1991), provides further gloss on what it means to be "seized" within the meaning of the Fourth Amendment. There, two police officers on patrol in an unmarked car came upon a group of four or five youths huddled around a parked car, who immediately scattered in various directions when they noticed the officers. The officers gave chase, and as one of them approached Hodari D., he tossed away a small rock that turned out to be crack cocaine. Hodari D. argued that the officers' pursuit of him constituted a "show of authority" that qualified as a Fourth Amendment seizure. In rejecting the argument, the Court considered the question whether an officer's uncomplied-with order – the Court's example was "Stop, in the name of the law!" – was a seizure. The Court said no. The Court thus held that, with respect to a show of authority, a Fourth Amendment seizure does not occur if the

subject does not yield to the officer's express or implied command.  *See Hodari D.*, 499 U.S. 625-26.

The Second Circuit has expressly recognized this principle.  In *United States v. Swindle*, 407 F.3d 562 (2d Cir. 2005), the court considered whether an unreasonable police order – that is, one made without reasonable suspicion that a subject was engaged in criminal activity – constituted a seizure.  The court carefully examined the information known to police officers at the time they activated their flashing strobe light as a means of ordering the driver of a car they were following to pull over.  The court concluded that the officers acted unreasonably in ordering the driver to pull over because they did not have the required "reasonable suspicion" to effectuate a *Terry* stop.  *Swindle*, 407 F.3d at 569.  Nevertheless, and despite consternation about the result, the court's careful analysis of the opinion in *Hodari D.* led the court to conclude that, even if an officer's order to a person is unsupported by reasonable suspicion and is therefore unreasonable, a seizure does not occur if the subject does not submit to the officer's assertion of authority.  *See Swindle*, 407 F.3d at 572-73.  Or, put another way, the mere issuance of an unreasonable order by an officer does not constitute a seizure.

The above authorities lead to the conclusion that, based on the evidence adduced at the hearing, the defendant Kinred was not "seized" within the meaning of the Fourth Amendment until after he shoved Officer Ravich out of the way and broke for the entrance of the building at 1257 Loring Avenue.  At that point, he had committed the offense of harassment in the second degree in violation of the New York Penal Law, *see*

N.Y. Penal Law § 240.26(1),[5] in the presence of Officer Ravich, who therefore had probable cause to make an arrest. *See, e.g., Beck v. Ohio*, 379 U.S. 89, 91 (1964) (officers have probable cause to make an arrest if the "facts and circumstances within their knowledge . . . were sufficient to warrant a prudent man in believing that the [subject] had committed or was committing an offense." Because the weapon was thereafter obtained pursuant to an arrest supported by probable cause, its seizure did not violate the Fourth Amendment.

Whether or not the officers had reasonable suspicion prior to the shove of Officer Ravich is irrelevant to the inquiry. Prior to that point, the encounter between the officers and the defendant consisted of several questions by the officers and answers by the defendant, followed by a request that the defendant move. Even if the request is characterized as an unreasonable order, unsupported by any reasonable suspicion, that alone does not constitute a seizure. The defendant's response – the shove and dash for the door – can only be viewed as a failure to submit to the assertion of authority, and consequently no Fourth Amendment seizure had occurred at that point.

The court therefore need not resolve the factual dispute about whether or not the officers actually smelled burning crack before they approached the defendant.

---

[5]Section 240.26(1) provides,

A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person:

    1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same . . .

Nevertheless, while there is no clear answer to that question, there is evidence to support Officer Ravich's testimony about the issue. Although the defendant's counsel argues that burning crack has no definable odor and certainly none that could be smelled outdoors at a distance of 15 to 20 feet, no evidence to that effect was adduced at the hearing. Rather, Officer Ravich testified that burning crack does have a distinctive odor which he had witnessed on a number of occasions in making a number of prior arrests. That the officers actually had a suspicion of crack use is also supported by their interest in inspecting the area around the defendant, a fact that the defendant does not dispute. The court thus does not find the testimony offered by the officers inherently unbelievable or unreliable, and nothing about their demeanor or the manner in which they testified gave rise to doubt about their credibility. To be sure, the defendant in his affidavit offers a different version of how the encounter transpired, but the defendant did not testify or offer any evidence in support of his version of events, and the affidavit itself is inadmissible hearsay. The court therefore finds no basis to reject the officers' testimony about why they approached the defendant and about what happened during their encounter.

The court thus concludes that, because no seizure of the defendant occurred prior to the point when the officers sought to effectuate the arrest of the defendant on probable cause that he had committed an offense, no Fourth Amendment violation occurred. Accordingly, suppression of the weapon and ammunition that were recovered in the course of making that valid arrest is not warranted.

## CONCLUSION

For the foregoing reasons, I make the following recommendations:

1. In view of the government's agreement to redact the indictment as requested by the defendant, its acknowledgment of and intention to abide by its obligations to produce exculpatory and impeachment evidence, and its agreement to provide notice at least two weeks before trial of any "prior bad act" evidence it will seek to introduce, no order is required with respect to the defendant's motion concerning those matters;

2. In view of the defendant's acknowledgment that discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure has been provided, no order is required with respect to the defendant's motion concerning that issue;

3. The defendant's motion to bifurcate the evidence at trial should be denied; and

4. The defendant's motion to suppress evidence of the weapon and ammunition that underlie the charges against him should be denied.

\*     \*     \*     \*     \*     \*

Any objections to this Report and Recommendation must be submitted to Judge Johnson within 14 days of receipt of this report. Failure to file objections within the specified time may constitute a waiver of the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE*

*AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *but cf. DeLeon v. Strack*, 23 F.3d 84, 86-87 (2d Cir. 2000); *United States v. Male Juvenile*, 121 F.3d 34, 37-39 (2d Cir. 2000).

Respectfully Submitted,

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
   May 18, 2010